IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Newport News Division*

FILED
IN OPEN COURT

MAR 13 2023

CLERK, U.S. DISTRICT COURT
NEWPORT NEWS, VA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | FILED UNDER SEAL |
| | ) | |
| v. | ) | CRIMINAL NO. 4:23-cr-21 |
| | ) | |
| OBINNA NWAFOR, | ) | 18 U.S.C. § 1349 |
| | ) | Conspiracy to Commit Wire and Mail Fraud |
| Defendant. | ) | (Count 1) |
| | ) | |
| | ) | 18 U.S.C. §§ 1343 and 2 |
| | ) | Wire Fraud |
| | ) | (Counts 2 and 3) |
| | ) | |
| | ) | 18 U.S.C. §§ 1341 and 2 |
| | ) | Mail Fraud |
| | ) | (Count 4) |
| | ) | |
| | ) | 18 U.S.C. § 981 and |
| | ) | 28 U.S.C. § 2461 |
| | ) | Criminal Forfeiture |

INDICTMENT

March 2023 Term – at Newport News, Virginia

GENERAL ALLEGATIONS

1.  The United States Small Business Administration (SBA) is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2.  As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees. In addition to traditional SBA funding programs, the CARES Act, which was signed into law in March

2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 pandemic.

3. Relevant here, the CARES Act expanded the SBA's long-standing Economic Injury Disaster Loan Program (EIDL) to provide for loan assistance (including $10,000.00 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds can be used to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the disaster not occurred. Such loan proceeds, however, are not intended to replace lost sales or profits or for expansion of the business.

4. Unlike certain other types of SBA-guaranteed loans, EIDL funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal and application. The EIDL application process, which uses certain outside contractors for system support, collects information concerning the business itself, such as gross revenues and the cost of goods sold for the business prior to January 31, 2020. The application also collects certain personally identifiable information (PII) of the business owner, including the business owner's full legal name, social security number, address, and telephone number. Prior to submitting an EIDL application, the applicant must electronically certify that the information provided is accurate and is warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

5. Once the SBA authorizes a loan under the EIDL program, the applicant is required to take certain steps before the loan proceeds are disbursed. Among other actions, the applicant is required to confirm the information for the bank account into which the loan proceeds are to be deposited, to include the bank name, routing number, account type, and account number. In addition, the applicant is required to sign SBA-generated loan documents

that set forth the terms and conditions of the loan. These documents include a Loan Authorization and Agreement, a Note, and a Security Agreement.

6. For EIDL loans greater than $25,000, the Loan Authorization and Agreement requires the applicant (referred to as the "Borrower" in the loan documents) to grant the SBA a continuing security interest in any and all "Collateral," which is defined in the Loan Authorization and Agreement as "all tangible and intangible personal property." In other words, loans in excess of $25,000 funded under the EIDL program are expressly conditioned upon the loan being secured by the borrower's personal property.

7. The Security Agreement, in turn, formalizes the security interest granted by the borrower to the SBA. Among other things, the Security Agreement expressly contemplates that the SBA will take steps to "perfect" its security interest. Specifically, the Security Agreement provides that the Borrower consents to the "filing or recording or any documents necessary to perfect . . . [the] security interest."

8. The general rule in the Commonwealth of Virginia, subject to certain statutory exceptions, is that a security interest is perfected by the filing of a Uniform Commercial Code (UCC) financing statement. The State Corporation Commission's Clerk's Office, located in Richmond, Virginia, is designated as the central filing office for UCC documents, and UCC financing statements may be filed with that office online through the Clerk's Information System or by mail.

9. In or about September 2020, L.H., a resident of Norfolk, Virginia, learned that an EIDL loan had been fraudulently obtained in her name when she received a statement from the SBA at her home address, advising her that the first payment on an EIDL loan obtained in her

3

name was due in August 2021. L.H. had not applied for a loan under the EIDL program, nor did she own a small business to be eligible for such a loan.

10. On August 4, 2020, an application for an EIDL loan in the amount of $150,000 was submitted to the SBA, using L.H.'s name, social security number, address, phone number, and date of birth—all of did, in fact, belong to L.H.. A Loan Authorization and Agreement, Note, and Security Agreement were electronically signed using L.H.'s name on August 4, 2020. Thereafter, loan proceeds in the amount of $149,900 were disbursed to an HSBC bank account ending in 6096 on August 6, 2020. L.H. did not use HSBC for banking needs and did not receive any of the money from the loan.

11. On August 15, 2020, shortly after the L.H. EIDL loan was funded, Corporation Service Company, a third-party provider of UCC filing services, electronically filed a UCC financing statement with the Virginia State Corporation Commission, which listed L.H. as the "debtor," and the SBA as the "secured party." In addition, the financing statement included the SBA loan number assigned to the loan that was obtained using L.H.'s information.

12. Further investigation revealed a number of related EIDL loans that had been fraudulently obtained. An application for one such loan was submitted to the SBA on or about July 8, 2020, using the business name "Kerrido G. Farms" and the personal information of K.G., a resident of Burke, Virginia, who was identified as the business owner. The application sought an EIDL loan in the amount of $150,000.

13. The name, date of birth, social security number, and address used on the loan application were correct and belonged to K.G., but K.G. did not apply for the loan, nor did K.G. authorize anyone to obtain a loan on K.G.'s behalf. In addition, K.G. does not own or work at a business named "Kerrido G. Farms."

14. A Loan Authorization and Agreement, Note, and Security Agreement were electronically signed using K.G.'s name on July 11, 2020, and EIDL loan proceeds in the amount of $149,900 subsequently were deposited into a Citibank bank account ending in 9505 on July 14, 2020.

15. On July 21, 2020, Corporation Service Company electronically filed a UCC financing statement with the Virginia State Corporation Commission, listing K.G. as the "debtor," and the SBA as the "secured party." The financing statement includes the SBA loan number assigned to the loan that was obtained using K.G.'s information. K.G. did not receive any of the money from the loan and was unaware of the loan and the financing statement..

16. The investigation further revealed that both the HSBC bank account ending in 6096 (the account in which the funds from the L.H. loan were deposited) and the Citibank bank account ending in 9505 (the account in which the funds from the K.G. loan were deposited) are accounts associated with OBINNA NWAFOR, the defendant herein.

17. Within just days after the EIDL loan proceeds were deposited into the HSBC bank account ending in 6096, a number of large withdrawals and transfers were made from that account. Notably, approximately $59,000 was transferred from the HSBC account to a Bank of America held jointly by NWAFOR and his spouse. In addition, nearly $50,000 was transferred to a bank account held in the name of a Nigerian entity in which NWAFOR holds an interest.

18. Similarly, within days after the EIDL loan proceeds were deposited into the Citibank bank account ending in 9505, $45,600 was transferred to the same Bank of America account referenced above, and nearly $40,000 was transferred to the same bank account of the Nigerian entity referenced above.

## COUNT ONE
(Conspiracy to Commit Wire and Mail Fraud)

THE GRAND JURY CHARGES THAT:

1. The factual allegations contained in the General Allegations Section are incorporated herein by reference as if set out in full.

2. Beginning in or about at least June 2020 and continuing through in or about November 2020, OBINNA NWAFOR, the defendant herein, and other conspirators, both known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to commit the following offenses against the United States:

   a. To knowingly devise and intend to devise a scheme and artifice to defraud for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, for which the defendant and conspirators caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343; and

   b. To devise and intend to devise a scheme and artifice to defraud for obtaining and property by means of false and fraudulent pretenses, representations, and promises, for which the defendant and conspirators knowingly caused to be delivered by mail according to the direction thereon, in violation of Title 18, United States Code, Section 1341.

## WAYS, MANNER, AND MEANS OF THE CONSPIRACY

The ways, manner, and means by which the foregoing objectives of the conspiracy to commit wire and mail fraud were to be accomplished included, but were not limited to, the following:

6

3. The primary purpose of the conspiracy and the scheme and artifice was for NWAFOR and the conspirators to obtain funds through fraudulent means by procuring loans from the SBA's EIDL program using stolen identities and directing the SBA to disburse the proceeds of those loans into accounts controlled by a conspirator, so that the conspirators could convert the loan proceeds for their own use and benefit.

4. It was part of the conspiracy and the scheme and artifice that the conspirators unlawfully obtained the personal information of multiple individuals, including but not limited to full legal names, social security numbers, home addresses, and personal phone numbers.

5. It was further part of the conspiracy and the scheme and artifice that the conspirators submitted fraudulent applications for EIDL loans to the SBA, and on each application would identify one of the individuals whose personal information was unlawfully obtained by the conspirators as the purported owner of a fictitious business.

6. It was further part of the conspiracy and the scheme and artifice that the conspirators, given that the business did not exist, would provide false information regarding the business, such as total revenues and costs of goods sold.

7. It was further part of the conspiracy and the scheme and artifice that the conspirators would cause the SBA to authorize and fund fraudulent EIDL loans.

8. It was further part of the conspiracy and the scheme and artifice that the conspirators, after the SBA authorized a fraudulent EIDL loan application, would identify a bank account that was connected to one of the conspirators as the account into which the EIDL loan proceeds were to be deposited.

9. It was further part of the conspiracy and the scheme and artifice that the conspirators, after the SBA authorized a fraudulent EIDL loan application, would fraudulently

electronically sign the standard SBA-generated loan documents, to include the Loan Authorization and Agreement, Note, and Security Agreement, using the electronic signature of the purported borrower.

10.     It was further part of the conspiracy and the scheme and artifice that the conspirators, in executing the loan documents, would cause a security interest to attach to the purported borrower's personal property.

11.     It was further part of the conspiracy and the scheme and artifice that the conspirators would cause the SBA, or a third-party entity acting on its behalf, to electronically transmit UCC financing statements to the Eastern District of Virginia, from a location outside the Commonwealth of Virginia, in an effort to perfect the purported security interest.

12.     It was further part of the conspiracy and the scheme and artifice that the conspirators would cause the SBA to disburse EIDL loan proceeds to accounts controlled by a conspirator.

13.     It was further part of the conspiracy and the scheme and artifice that the conspirators would use the EIDL loan proceeds for their own benefit.

14.     It was further a part of the conspiracy and the scheme and artifice that the conspirators caused the use of the United States mails.

(In violation of Title 18, United States Code, Sections 1349, 1341, and 1343.)

## COUNTS TWO AND THREE
(Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

1. The Grand Jury realleges and incorporates by reference the allegations contained in the General Allegations Section and in Paragraphs 2 through 13 of the Ways, Manner and Means Section of Count One as if fully set forth herein.

2. From in or about at least June 2020, through in or about at least November 2020, in the Eastern District of Virginia and elsewhere, OBINNA NWAFOR, the defendant herein, aided and abetted by others and along with others known and unknown to the Grand Jury, with the intent to defraud, willfully participated in, with knowledge of its fraudulent nature, the above-described scheme and artifice to defraud and obtain money and property by means of materially false, fraudulent and fictitious pretenses, representations, and promises.

3. On or about the dates set forth below, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, in the Eastern District of Virginia and elsewhere, OBINNA NWAFOR, the defendant herein, aided and abetted by others and along with others known and unknown to the Grand Jury, did knowingly and willfully cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, as set forth in the table below, to or through computers and terminals in the Eastern District of Virginia from or through computers and terminals located outside the Commonwealth of Virginia.

| Count | Date of Wire Transmission (on or about) | Description of Wire Transmission |
|---|---|---|
| 2 | August 15, 2020 | The Corporation Service Company, from Springfield, Illinois, on behalf of the SBA, electronically transmitted a UCC financing statement to the Virginia State Corporation Commission's Office of the Clerk, located in Richmond, Virginia. |
| 3 | July 21, 2020 | The Corporation Service Company, from Springfield, Illinois, on behalf of the SBA, electronically transmitted a UCC financing statement to the Virginia State Corporation Commission's Office of the Clerk, located in Richmond, Virginia. |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
(Mail Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

1. The Grand Jury realleges and incorporates by reference the General Allegations Section and the allegations contained in Paragraphs 2 through 13 of the Ways, Manner and Means Section of Count One as if fully set forth herein.

2. From in or about at least June 2020, through in or about at least November 2020, in the Eastern District of Virginia and elsewhere, OBINNA NWAFOR, the defendant herein, aided and abetted by others and along with others known and unknown to the Grand Jury, with the intent to defraud, willfully participated in, with knowledge of its fraudulent nature, the above-described scheme and artifice to defraud and obtain money and property by means of materially false, fraudulent and fictitious pretenses, representations, and promises.

3. On or about September 21, 2020, in the Eastern District of Virginia, for the purpose of executing the above-described scheme and artifice to defraud and deprive, the defendant knowingly caused to be delivered by U.S. mail according to the direction thereon, the following matter or thing: A statement dated September 16, 2020, regarding the fraudulent EIDL loan obtained using L.H.'s personal information, addressed to L.H. and delivered at the mailing address of **** Norway Place, Norfolk, Virginia 23509.

(In violation of Title 18, United States Code, Sections 1341 and 2).

## FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1. The defendant, if convicted of any of the violations alleged in this Indictment, shall forfeit to the United States, as part of sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2. If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461.)

**Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.**

UNITED STATES v. OBINNA NWAFOR
4:23-cr- 21

A TRUE BILL:

**REDACTED COPY**

_____
FOREPERSON

Jessica D. Aber
United States Attorney

By: _William J. Homer_
William J. Homer
Assistant United States Attorney
Attorney for the United States
721 Lakefront Commons, Suite 300
Newport News, VA 23606
Phone: (757) 591-4000
Fax:    (757) 591-0866
Email: william.homer@usdoj.gov

By: _Brian J. Samuels_
Brian J. Samuels
Assistant United States Attorney
Virginia State Bar # 65898
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866